UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANTONIO SHAW,　　　　　　　 )
　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　 )
　　　　　Movant,　　　　　　 )
　　　　　　　　　　　　　　　 )
　　　v.　　　　　　　　　　　 )　　　Case No. 4:16cv366 HEA
　　　　　　　　　　　　　　　 )
UNITED STATES OF AMERICA,　　 )
　　　　　　　　　　　　　　　 )
　　　　　Respondent.　　　　　 )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Movant's  Motion to Vacate, Set Aside or

Correct Sentence  pursuant to 28 U.S.C. § 2255 [Doc. #1], First Amended Motion

to Vacate, Set Aside or Correct Sentence [Doc. #5], and Second Amended Motion

to Vacate, Set Aside or Correct Sentence [Doc. #10].  The United States of

America has responded [Doc. # 20] to the motions, pursuant to the Court's Case

Management Order.  For the reasons set forth below the Motions will be denied

and no hearing will be granted.

## Procedural History

On September 2, 2010 a federal grand jury returned an initial indictment that

charged Movant as a felon in possession of ammunition in violation of 18 U.S.C. §

922(g)(1).  After several superseding indictment, Movant was ultimately charged

in a six-count, third superseding indictment with his co-defendant Stanley Carter.

Count One of the third-superseding indictment charged Movant with conspiracy to

possess with intent to distribute marijuana, cocaine base and ecstasy from March 7,

2004 through December 2009.  In Count Two, Movant was charged with

possessing a firearm from March 2004 through May 2008 in furtherance of the

drug-trafficking crime set forth in Count One.  Count Three charged Movant with

possessing a firearm from June 1, 2008 through 2009 in furtherance of the drug-

trafficking crime set forth in Count One.  Counts Four, Five and Six were directed

against co-defendant Stanley Carter.

**TRIAL**

Movant proceeded to a jury trial on September 18, 2012.  The Government's

evidence included a portion of a transcript of Movant's sworn testimony from a

2009 criminal trial in the Circuit Court of St. Louis City.  In that case, Movant had

testified that he started selling marijuana in high school.  Movant also had testified

that he bought a handgun magazine and wanted his girlfriend to buy a gun to

protect himself and his family, and that he "was trying to teach [his girlfriend] to

protect [sic] because [Movant] didn't want to get caught with no gun."  Movant

had testified that he needed protection from "a lot of hatred out there" that existed

"because [he] sold weed."

2

Several law enforcement officers then testified about their interactions with Movant. St. Louis Metropolitan Police Officer David King testified that he arrested Movant on July 22, 2004, when Movant and two other individuals were traveling in a stolen vehicle. Movant possessed 19.85 grams of marijuana and approximately $160.00. Because Movant had no user paraphernalia on his person and reported that he had been unemployed for some time, King believed the money to be proceeds from illicit narcotics sales.

Jennings Police Officer Calvin McFarland also testified about a time he arrested Movant. On July 28, 2005, McFarland stopped the vehicle in which Movant and two other individuals were traveling. As McFarland approached the vehicle, he observed Movant moving in a way that led him to believe Movant was hiding something in the vehicle. McFarland ordered the occupants out of the vehicle and searched the backseat of the vehicle, where Movant had been seated. There, he found a semiautomatic pistol that was fully loaded with a live round in the chamber and the hammer cocked back in the ready position.

Eight months later, on March 11, 2006, St. Louis Metropolitan Police Detective Andrew Griffin and his partner stopped Movant for a traffic violation. Movant was unable to produce any identification, and the detectives asked him to step out of the vehicle. As Movant complied, a baggie of marijuana fell to the ground. Movant was placed under arrest. A search of the vehicle revealed three

additional baggies of marijuana, totaling 57.58 grams of marijuana. Movant also had $1,042 with him.

On November 16, 2007, St. Louis Metropolitan Police Detective David Rudolph provided perimeter security during the execution of two search warrants at 7145 and 7151 Virginia in the City of St. Louis, two residences associated with Movant. As the warrants were being executed, Rudolph saw Movant exit the front door of another address, 501 Robert. A pat-down of Movant revealed a 9-mm semiautomatic pistol tucked into his rear waistband. The firearm was fully loaded, with one round in the chamber. Movant was placed under arrest. Rudolph found $1,776 and plastic bag containing .89 grams of crack cocaine in Movant's pants pocket. Rudolph found no user paraphernalia on Movant's person.

Demetrius Whitt, a 23-year-old convicted felon also testified on behalf of the Government. Whitt started selling drugs at the age of 13 or 14 and continued until he was convicted for federal conspiracy to possess with the intent to distribute ecstasy and possession of a firearm in furtherance of a drug trafficking crime. Whitt sold his drugs in the geographic area known as "The Ville." Whitt knew Movant and his associates to be connected with a geographic area in the City of St. Louis called "The Dip Set." He and Movant were engaged in an ongoing feud over money and drugs, and the two had shot at each other. Whitt and Movant were each trying to kill the other in order to take over the other's drug-selling territory.

Whitt testified that at a September, 2008 meeting, Whitt and Movant agreed that if the police contacted either Whitt or Movant, neither party would tell on the other. They also agreed to tone down the ongoing violence between the two groups for a period of time while police attention may be focused on them. All parties at the meeting were armed. During the meeting, Whitt received phone calls from drug customers interested in purchasing ecstasy and marijuana. He asked Movant to give him a deal on some marijuana. Movant offered Whitt one pound of marijuana for $1,200 or $1,000 per pound if Whitt bought more than one pound. The parties traveled to a location in the Dip Set where Movant jumped out of the vehicle with his firearm tucked under his armpit, went into a gangway, and returned with a bag of marijuana. Whitt bought three pounds of marijuana from Movant.

Darnell Lathan, a 32-year-old convicted felon, testified that he also bought marijuana and ecstasy from Movant from 2006 to 2008. During this period, Lathan bought one to two pounds of marijuana from Movant, three to five times per month, for $1,200 per pound. Lathan would meet Movant in the Dip Set, tell Movant what he needed, and then receive that quantity from Movant. Lathan testified that Shaw was armed when he made his drug sales, either with a .40 caliber weapon, a .9 mm weapon or an AK assault rifle. Lathan also purchased

from Movant's associate "Little Psyche," who would hand marijuana to Movant, who then gave it to Lathan.

Officer Edward Clay testified for the Government as an expert in the area of drug distribution. Officer Clay opined that Movant's activities involving marijuana, ecstasy and cocaine base from 2004 to 2009 were indicative of intent to distribute those drugs. In reaching this opinion, Officer Clay considered, among other things, the 19.85 grams of marijuana and $160 seized from Movant on July 22, 2004; the seizure of a firearm from Movant in Jennings, Missouri on July 18, 2005; the seizure of .89 grams of crack cocaine, a firearm and $1,776 from Movant on November 16, 2007; the statements of Demetrius Whitt and Darnell Lathan; and the sworn testimony by Movant in his prior criminal trial.

On September 25, 2012, the jury returned its verdict finding Movant guilty on Count One of conspiracy to possess with intent to distribute marijuana and cocaine base, and Count Two, possessing a firearm in furtherance of the drug trafficking conduct from 2004 through May 2008. The jury acquitted Movant of conspiracy to distribute ecstasy relevant to Count One, and Count Three, which charged a § 924(c) violation for the time period June 2008 through 2009.

**SENTENCING**

A Presentence Investigation Report ("PSR") was prepared. Movant's Base Offense Level was 18, based on a total quantity of marijuana of 35.98302

kilograms.[1] Two levels were added under § 3B1.5(2)(A) because Movant was convicted of a drug-trafficking crime and the offense involved the use of body armor, and two levels were added under § 3B1.1(c) for Movant's role as an "organizer, leader, manager, or supervisor in any criminal activity. This resulted in a Total Offense Level of 22.

The PSR calculated Movant's Criminal History as Category VI.

Based on Movant's Total Offense Level of 22 and Criminal History Category of VI, his advisory guideline imprisonment range for Count I was 84-105 months. In addition, Count II required a minimum term of imprisonment of seven years and a maximum term of life imprisonment, consecutive to any other sentence imposed.

Movant filed objections to the PSR, including objections to the criminal history computation, the two-level enhancement for use of body armor, and the

---

[1]     The total marijuana quantity was determined from the following: (1) 19.95 grams of marijuana from July 22, 2004 arrest (evidence introduced at trial); (2) 27.63 grams of marijuana from February 18, 2005 arrest (not introduced at trial); (3) .50 grams of marijuana from May 19, 2005 arrest (not introduced at trial); (4) 57.58 grams of marijuana from March 11, 2006 arrest (evidence introduced at trial); (5) 14.03 grams of marijuana from August 8, 2006 arrest (not introduced at trial); and (6) 26.03 grams of marijuana from October 14, 2008 arrest (not introduced at trial). This totaled 145.72 grams of marijuana.
        To this number, the PSR added the marijuana equivalency for the .89 grams of cocaine base (3.1782 kg marijuana) seized from Movant on November 16, 2007 (evidence which was introduced at trial). The PSR also added 72 pounds of marijuana (32.6592 kg), which Darnell Lathan testified during trial was the minimum amount of marijuana he had purchased from Movant from 2006 to 2008.

two level enhancement for an aggravating role under § 3B1.1(c). The Government opposed Movant's objections.

Movant appeared for sentencing on April 30, 2013. The Government called several witnesses at the sentencing hearing regarding Movant's involvement in a double homicide in 2008 in Riverview Circle. Det. Matt Hanewinkel, of the homicide division of the SLMPD, testified that the two victims had been shot multiple times, with gunshot wounds to their extremities, upper bodies and heads. Ballistics evidence revealed the victims were killed by an AR-15 rifle and an AK-47 rifle (also known as an SKS).

Co-defendant Stanley Carter testified that he was traveling in a vehicle with Movant and Richard Bobbitt when they noticed another vehicle occupied by members of the 59 Terrace Mob gang. Movant, Carter, and Bobbitt were feuding with the 59 Terrace Mob gang over drug territory. Movant, who was driving, followed the vehicle toward Riverview Circle. When the vehicle stopped, Bobbitt got out and shot a few rounds at the vehicle with the SKS. The other vehicle started to drive off, and Movant told Carter to "get them." Carter shot about ten rounds at the other car, which crashed. He approached the crashed vehicle and shot each victim twice in the head. He returned to Movant's vehicle and they drove away. Movant asked Carter if they were dead and he responded yes. Movant was smiling, laughing, and teasing Carter about being "a gangster."

David Ewing, a friend of Movant's who had bought pounds of marijuana from Movant, testified about a conversation they had while they were incarcerated at the Jennings jail. Movant told Ewing that he, Carter, and Bobbitt were responsible for the double homicide, and that he was the driver while Carter and Bobbitt were the shooters. Ewing testified that Movant said Carter and Bobbitt were scared, so Movant had to keep pressuring them. Movant told Ewing that the guns used belong to him, and that after the murders, Movant instructed Carter what to do with the car they had used. The details Movant told Ewing about the homicides, including the weapons used, the victims' vehicle, and the statements Movant made to Carter after the shootings, matched Carter's testimony.

Finally, Andromeda Sykes testified. She reported that she knew Movant and that he was associated with the Dip Set gang. Sykes had been involved in a relationship with Michael Fedrick, who was associated with the 59 Wabada set gang. Sykes testified that there was violence between the two gang groups. She said that in October 2007, Movant pulled up next to her car, pointed a rifle through the window at her, and asked if Fedrick was in the car. Fedrick was not in the car, and Movant told Sykes that had Fredrick been in the car, he would have shot it up. Sykes further testified that in February 2008, she was in her vehicle at the intersection of Goodfellow and Langston with her three children and her aunt. When she stopped at a light, Movant pulled up alongside the passenger's side of

9

her vehicle. He was in the car with two others. He pulled ahead of her, did a U-turn and stopped in front of her car. Movant then got out of his car, pointed a gun at her and started shooting. Sykes was able to drive away while he continued to shoot at her.

Movant's objections to the PSR were overruled, and a term of imprisonment of 378 months was imposed. This term consisted of 210 months on Count I, and a term of 168 months on Count II, to be served consecutively to Count I.

## FIRST APPEAL

Movant's conviction was appealed to the Eighth Circuit Court of Appeals. On appeal, Movant challenged the consideration of a seven-year-to-life statutory range on the § 924(c) conviction in Count II, arguing that it was in violation of *Alleyne v. United States*, 133 S.Ct. 2151 (2013). The Government conceded this argument. Movant also argued that the Court's upward variance from the applicable guideline range was procedurally and substantively improper and that the evidence was insufficient to support the guilty verdicts.

On May 15, 2014, the Eighth Circuit issued its opinion, wherein it affirmed on the sufficiency of the evidence for both guilty verdicts, remanded for resentencing on the *Alleyne* issue, and declined to address Movant's argument concerning the procedural and substantive reasonableness of his sentence. *United States v. Shaw*, 751 F.3d 918 (8th Cir. 2014).

On June 16, 2014, Movant appeared for resentencing. This Court recognized the correct mandatory minimum sentence for the firearm-possession offense, and imposed the same sentence: a total term of imprisonment of 378 months, consisting of 210 months on Count I, with a consecutive 168-month sentence on Count II.

**SECOND APPEAL**

Movant appealed to the Eight Circuit once again. Movant's counsel moved to withdraw and filed a brief under *Anders v. California*, 386 U.S. 738 (1967), arguing that the drug quantity attributed to Movant for purposes of calculating his advisory guideline range was not supported by the evidence and that in choosing a sentence above the guideline range, this Court erred in considering evidence presented at sentencing regarding uncharged criminal conduct. In a *pro se* brief, Movant additionally argued that (1) the district court failed to remedy the *Alleyne* error; (2) the evidence did not support his conviction for conspiring to distribute cocaine base; (3) the evidence did not support certain enhancements included in the calculation of his total offense level under the guidelines; and (4) the court erred in calculating his criminal history.

On March 23, 2015, the Eighth Circuit issued its opinion as to Movant's second appeal. Movant's challenges to the sufficiency of the evidence, the enhancements other than the drug quantity used in calculating his offense level,

and his criminal history, were rejected by the Eighth Circuit because those issues either were not raised or were decided adversely to Movant in his first appeal. As to the remaining issues, the Eighth Circuit ruled: (1) to the extent that Movant challenges the drug-quantity calculation, there is no clear error; (2) the District Court did not err in considering evidence of uncharged criminal conduct that was presented at the sentencing hearing; (3) there was no merit to Movant's argument that this Court failed to remedy its *Alleyne* sentencing error on remand; and (4) the sentence was not unreasonable.

On March 17, 2016, Movant filed a motion to vacate his sentence. Movant filed a first amended motion on the appropriate form on April 18, 2016 and a second amended motion on July 20, 2016.

## Claims

Movant raises 10 claims in his first amended § 2255 motion, and four additional claims in his second amended motion. Movant's first two grounds for relief raise claims of error which were not raised on direct appeal: (1) the prosecutor introduced evidence he knew to be perjured; and (2) Movant was absent during the answering of jury question in violation of his Fifth and Sixth Amendment constitutional rights. Movant alleges that these claims were not raised on appeal due to the ineffectiveness of his appellate counsel. For Movant's third, sixth, and seventh grounds for relief, he asserts trial counsel was ineffective for: (3)

refusing to honor Movant's decision to testify; (6) failing to present evidence of Movant's history of drug abuse; and (7) failing to keep Movant informed of important developments and failing to communicate. Movant's fourth, fifth, eighth, ninth, and tenth claims assert that appellate counsel was ineffective for: (4) failing to challenge erroneous jury instructions on appeal; (5) failing to petition for a rehearing *en banc*; (8) failing to challenge on appeal Movant's calculated criminal history points; (9) failing to challenge on appeal the two-level enhancement for the use of body armor; and (10) failing to challenge on appeal the two-level enhancement for aggravating role.

Movant's second amended § 2255 motion contains four additional claims: (1) violation of his Sixth Amendment right to a unanimous jury verdict; (2) prosecutorial misconduct for communicating with the jury during deliberation; (3) ineffective assistance of trial counsel for failing to move for a mistrial when a juror was unwilling to deliberate; and (4) ineffective assistance of appellate counsel for failing to raise the prosecutor's communications with the jury on appeal.

## Applicable Standard

Movant has "a heavy burden" in establishing ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To succeed on an ineffective assistance of counsel claim, a movant must show that counsel's performance was deficient and that the deficient

performance prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo*, 223 F.3d at 925.

An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, at 687-88; *Sera*, 267 F.3d at 874. There are two substantial impediments to making such a showing. First, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (*quoting Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at 874. *See also Ford v. Lockhart*, 905 F.2d 458, 462 (8th Cir. 1990) (evaluation of a claim of ineffective assistance of counsel is highly deferential with a strong presumption that counsel acted competently). Second, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (*quoting Strickland*, 466 U.S. at 690). When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Additionally, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland,* 466 U.S. at 692. The burden is on the movant to prove,

by a preponderance of the evidence, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *DeRoo*, 223 F.3d at 925.

A Court does not have to determine whether a movant meets the "performance" prong of the *Strickland* test. "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Young v. Bowersox,* 161 F.3d 1159, 1160 (8th Cir. 1998) (*quoting Strickland*, 466 U.S. at 697), *cert. denied*, 528 U.S. 880 (1998). *See also Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir.) (if the movant makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

The Court must hold an evidentiary hearing to consider claims in a § 2255 motion "'[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (alteration in original) (quoting 28 U.S.C. § 2255). Thus, a movant is entitled to an evidentiary hearing "'when the facts alleged, if true, would entitle [the movant] to relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 986)). The Court may dismiss a claim "without an evidentiary hearing if the claim

is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220-21 (8th Cir. 1990)).

## Discussion

## FIRST AMENDED MOTION

### 1. Was appellate counsel ineffective for not raising alleged prosecutorial misconduct on direct appeal?

Movant alleges that the Government committed prosecutorial misconduct by presenting perjured testimony at trial via witness Darnell Lathan and by "cutting and pasting" Movant's testimony from his previous trial to a deceptive and inaccurate result. Movant also claims that his appellate counsel was ineffective in failing to raise these issues on direct appeal.

The prosecutorial misconduct claim, not raised on direct appeal, is procedurally defaulted. To overcome the procedural default, Movant must demonstrate "cause" that prevented him from raising the claim on direct appeal, and "actual prejudice" resulting from the alleged prosecutorial misconduct. It is well-settled that attorney error resulting in a procedural default is not sufficient "cause" unless the attorney's performance was constitutionally deficient under the *Strickland* standard, discussed above. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Armstrong v. Iowa*, 418 F.3d 924, 927 (8th Cir. 2005).

Here, Movant merely recites the elements of *Strickland*, and offers no substantive evidence or argument in support of his ineffective assistance claim. For example, Movant makes the conclusory statements that appellate counsel knew the prosecution presented perjured testimony and that the claim had a reasonable chance of success on appeal, prejudicing Movant. These statements are insufficient to meet Movant's heavy burden in establishing ineffective assistance of counsel.

Moreover, nothing before the Court supports the requisite "cause," that is, the existence of prosecutorial misconduct. To demonstrate a due process violation based on prosecutorial misconduct, Movant must show "(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." *See United States v. Funchess*, 422 F.3d 698, 701 (8th Cir.2005).

Again, Movant merely recites these elements; the evidence he provides to support his claim of prosecutorial misconduct is insufficient to support his contentions. Movant asserts that Lathan's testimony must have been perjured because an ongoing feud between Lathan's associates and Movant's associates intensified after the killing of Movant's best friend in June 2007. The mere existence of some "feud" or "war" between Movant's and Lathan's associates is

insufficient to demonstrate that Lathan's statements were perjured. It is not unheard of for criminal syndicates, especially within the loosely organized structure of St. Louis City criminal actors, to transact with hostile competitors; for example, Demetrius Whitt testified to buying marijuana from Movant while their groups were feuding.

Movant further alleges that the Government knew or should have known Lathan was lying because his story about drug transactions changed between talking to federal agents and at trial. However, Movant does not point out any inconsistencies between Lathan's direct examination, cross examination, and other sworn statements.

In addition to Lathan's testimony, Movant claims that the Government committed perjury by "cutting and pasting" his testimony from his 2009 trial. In fact, the statements read to the jury as Exhibit 1 at Movant's trial represent a direct, unaltered quotation from the 2009 transcript:

> Q: And you were buying that gun to protect you?
> A: I was buying that gun to protect me, [my girlfriend], my family. I wasn't, I mean, for real I was trying to teach her to protect because I didn't want to get caught with no gun.
> Q: Right. That would be a felony for you, right?
> A: Right, it would.
> Q: And what did you need to be protected from?
> A: Because people, it's so, it's a lot of hatred out there, there's a lot of hatred.
> Q: There is?
> A: Yeah, because I sold weed.

Movant claims the testimony is perjured due to the omission of a statement that came shortly after the Exhibit 1 section, which was not read to the jury:

> Q: And you were still dealing drugs, dealing marijuana at the time.
> A: Yes, I was still dealing marijuana.
> Q: So you needed a gun for that?
> A: No, I didn't need a gun for that. . . .

Perjured testimony, of course, is testimony that is false. The excerpt read as Exhibit 1 was a true and accurate representation of Movant's prior testimony. Movant's statement "No, I didn't need a gun for that" does not affect the veracity of Movant's statements within the Exhibit 1 excerpt. At trial, the Court expressly asked Movant if there was "any additional testimony or statements or aspects of the transcript that [counsel] referred to that you want to present to the jury at this time," to which Movant replied "No, sir." Movant cannot now complain of the omitted statement from the 2009 transcript when he knowingly and under oath declined the opportunity to present it at trial.

Because there is insufficient evidence to support Movant's prosecutorial misconduct claim, his counsel's failure to raise that claim on appeal did not fall below an objective standard of reasonableness and thus was not deficient under *Strickland*. As such, counsel's alleged error is not constitutionally deficient and does not establish "cause" to excuse the procedural default for purposes of § 2255 review. Accordingly, Movant's prosecutorial misconduct claim of error is procedurally barred. The claim is denied.

**2.  Was appellate counsel ineffective for not raising movant's absence during the answering of the jury's questions on direct appeal?**

Movant claims that his Fifth and Sixth Amendments rights were violated because he was not brought into the courtroom when the Court and the parties' attorneys discussed and determined how to respond to jury questions.  Movant argues that he had a right to personal presence at all critical stages of the trial and that he "had a constitutional right to be present during all critical stages of this particular portion of his jury trial and where the jury and judge were having discussions about the evidence of the case."  Movant claims that appellate counsel was ineffective for failing to raise this issue on direct appeal.

As with Movant's first ground for relief, this jury question issue was not raised on direct appeal and is procedurally defaulted.  In order  to overcome the default, Movant must demonstrate "cause" that prevented him from raising the claim on direct appeal, and "actual prejudice" resulting from the alleged prosecutorial misconduct.  To constitute sufficient "cause", attorney error must be the result of constitutionally deficient performance under *Strickland*.  *Murray*, 477 U.S. at 488; *Armstrong*, 418 F.3d at 927.

 "The Fifth and Sixth Amendments protect a criminal defendant's right to be present at all stages of the trial."  *Stewart v. Nix*, 972 F.2d 967, 971 (8th Cir. 1992) (*internal citations omitted*).  "[A] trial court must provide the defense attorney with notice and a meaningful opportunity to object before responding to a question

asked by the jury once deliberations begin." *Id.* (*citing Rogers v. United States*, 422 U.S. 35, 38 (1975)). "'Communication between judge and jury in the absence of and without notice to the defendant creates a presumption of prejudice. Such presumption may be overcome, however, by a clear indication of a lack of prejudice.'" *United States v. Smith*, 771 F.3d 1060, 1063 (8th Cir. 2014) (*quoting Stewart*, 972 F.2d at 971). Movant's counsel was present and had a meaningful opportunity to object during jury deliberations, protecting the rights of Movant.

Moreover, the communications between the judge and jury were of a nature that could not result in prejudice to Movant. Movant's "absence means little when the trial court's communication merely repeats instructions that it has already given, or involves a question of law rather than fact." *Stewart*, 972 F.2d at 971 (*citing United States v. Nelson*, 570 F.2d 258, 261 (8th Cir.1978)).

One jury request was for an evidentiary exhibit, which was properly provided to the jury. "Generally, jurors may examine any document properly admitted in evidence. The trial court has considerable discretion to send exhibits to the jury during its deliberation, and the court's determination will not be reversed on appeal unless it has abused its discretion." *United States v. Williams*, 87 F.3d 249, 255 (8th Cir. 1996). Again, defense counsel was present and did not object to the Court providing this exhibit to the jury.

For each of the remaining jury questions or requests, the Court's response was "You are to be guided by the evidence as you recall it and the instructions of law provided to you." These responses were not substantive discussion of the trial or evidentiary issues. Rather, these responses merely reiterated the jury instructions.

Movant was not subjected to actual prejudice by his absence during jury deliberations, so the issue would have been meritless on appeal. Counsel is not ineffective for failing to bring a meritless claim on appeal. *Dyer v. United States*, 23 F.3d 1424, 1426 (8th Cir. 1994). Movant's claim is denied as procedurally barred.

**3. Was trial counsel ineffective for purportedly refusing to allow Movant to testify at trial?**

Movant asserts his trial counsel was ineffective for not allowing Movant to testify in his own behalf at trial. He now alleges that, during a weekend recess, trial counsel threatened to withdraw if Movant insisted on testifying, and promised to present a myriad of evidence for the defense instead. According to Movant's § 2255 motion, trial counsel broke that promise:

> As I'm standing with Counsel as Counsel [is] addressing the Court, I hear Counsel tell the Court that the defense will not be putting on [any] evidence. I did not understand what that meant because Counsel told me he was going to put on a lot of evidence in my defense. After Counsel addressed the Court, the Judge asked or said something to [me] but [I] was trying to understand what was going on.

Movant's claim that trial counsel "refused to honor his decision to testify" is expressly refuted by the record, as is Movant's assertion that trial counsel refused to present other evidence, including the full 2009 transcript. Before the defense rested, the Court, trial counsel, and Movant engaged in the following colloquy:

> COUNSEL: With respect to a defense case, we're not going to put on any evidence, Your Honor, and as a follow-up to our discussion yesterday, I've spoken to my client at length about his right to testify or not to testify in this case. It was a lot of effort. I will state, in all honesty to the Court, that the client was keen on testifying in his own defense; however, it was my strong advice that he did not testify for a whole host of reasons I don't think I'm obligated to get into out here in open court.

> THE COURT: Uh-huh.

> COUNSEL: However, after much ado, Mr. Shaw now agrees with my advice, and he will not take the stand in his own defense. As a secondary measure, another issue of concern for Mr. Shaw was the use of a transcript that I objected to at the onset of this case, so I think I preserved that issue for appeal, and based on conversations with him, we will not present or ask for leave to present any additional commentary from that specific transcript. I wanted to make a record of that fact, too, because that was one of Mr. Shaw's issues, and I think he can speak for himself as to whether or not he agrees with what I just stated to the Court.

> THE COURT: All right. Thank you, sir. Mr. Shaw, come on over to the podium please.

Movant was then sworn in by the clerk.

> THE COURT: Mr. Shaw, did you – you were sitting in the courtroom when your attorney made his announcement a moment or so ago, correct?

> MOVANT: Yes, sir.

> THE COURT: All right. And is that a correct statement and assessment of everything that's transpired in relation to the

discussions you've had with him since our recess yesterday afternoon?

MOVANT: Yes, sir.

THE COURT: All right. And having said that, do you want to testify or not testify in this case?

MOVANT: Not testify.

THE COURT: All right. Is there any other evidence that you want to present or want your lawyer to present at this time in light of the announcement that he's made and the discussions that you've had with him?

MOVANT: No, sir.

THE COURT: All right. Is there any additional testimony or statements or aspects of the transcript that Mr. Lynch referred to that you want to present to the Jury at this time?

MOVANT: No, sir.

THE COURT: All right. Are you fully satisfied with the discussions that you've had with Mr. Lynch and your decision in relation to that discussion with him about not testifying in the case?

MOVANT: Yes, sir.

THE COURT: All right. Is there anything that you're confused about or anything that you have any questions about in relation to that at this time?

MOVANT: No, sir.

THE COURT: All right. That being the case, you understand that in not presenting any evidence and including not testifying in the case that means that the defense rests, is that correct, Mr. Lynch?

COUNSEL: Yes, Your Honor.

THE COURT: And there will be no further evidence or testimony of any kind in the trial, and we will proceed to instructing the Jury and arguing the case, and the Jury will then receive it for its deliberations. Do you understand that?

MOVANT: Yes, sir.

THE COURT: Is that how you want to proceed?

MOVANT: Yes, sir.

THE COURT: All right. Any question about that in your mind?

MOVANT: No, sir.

The Court repeatedly asked Movant about his right to testify and other aspects of his defense. Movant knowingly and willingly waived his right to testify. Movant's newly alleged "facts" surrounding his decision not to testify are affirmatively refuted by the record. Movant fails to demonstrate that trail counsel prohibited his testimony; therefore counsel's performance was not deficient. Movant's third claim is denied.

## 4. Was appellate counsel ineffective for failing to challenge jury instructions on appeal?

Movant claims that he was prejudiced by appellate counsel's failure to challenge jury instructions on appeal. Movant asserts that had Appellate counsel challenged the instructions, there was a reasonable probability that the Eighth Circuit would have reversed his guilty verdicts.

The Eighth Circuit reviews the district court's formulations of jury instructions for abuse of discretion. *United States v. White Calf*, 634 F.3d 453, 456 (8th Cir. 2011). It will reverse only if the defendant is prejudiced by a failure to properly instruct. *Id.* It "will affirm if the entire charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case." *United States v. Blazek*, 431 F.3d 1104, 1109 (8th Cir. 2005).

Movant now claims Jury Instruction No. 25 failed to properly instruct because it did not include "a known possession of crack cocaine and/or marijuana" in the elements of conspiracy to possess with intent to distribute. Movant misunderstands the legal elements of a conspiracy. The crime of conspiracy is committed even when the underlying crime conspired to (here, possession of the controlled substance with intent to distribute it,) does not actually happen. *See Salinas v. United States*, 522 U.S. 52, 65 (1997) ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself.") Jury Instruction No. 25 contained the accurate applicable law.

Movant also objects to the descriptions of "Count One" and "Count Two" in Jury Instruction No. 19. That Instruction merely describes the indictment and instructs the jury that the indictment is not evidence. Not only do the descriptions fairly and adequately describe the indictment, but Movant also could not have been prejudiced by the descriptions, which are not evidence.

Movant claims that the use of the word "or" in Jury Instructions Nos. 19 and 31 ("marijuana, MDMA (ecstacy), or cocaine base (crack)"), was improper because "the jury[] could have [taken] from these instructions, that they had to find Shaw conspired to distribute marijuana and MDMA (ecstacy) or marijuana and cocaine base (crack)." The phrasing used, "marijuana, MDMA (ecstacy), or

cocaine base (crack)," is plainly understandable and fairly and adequately indicates that the jury had a choice of finding a conspiracy involving just one of those substances, any two of three the substances, or all three substances.

Movant also objects to the use of an abbreviation of the language of § 924 (c)(1)(A) in Jury Instructions No. 23, which read, in part: ". . . [A]ny person . . . who, in furtherance of any such [drug trafficking] crime, possess a firearm . . . shall . . . be sentenced [according to law]." (Brackets and ellipses in original). Movant does not articulate the way in which Jury Instruction No. 23 offers an inaccurate statement of law. Instruction 23 offers a complete statement of the law within § 924 (c)(1) that was applicable to Count Two.

The formulation of jury instructions was well within the discretion of the Court and the law, rendering any appellate challenge meritless. Movant's claim is denied.

## 5. Was Appellate counsel t ineffective for failing to petition for a rehearing and rehearing *en banc*.

Movant next argues that appellate counsel was ineffective for failing to petition for a rehearing and rehearing *en banc*. It seems that Movant's argument is that, on appeal, neither his counsel nor the Eighth Circuit addressed the sufficiency of the evidence to prove the elements of conspiracy. This is clear misstatement of fact. Appellate counsel briefed the issue, stating:

Demetrius Whitt and Darnell Lathan's testimony served as the lynchpin to the Government's conspiracy case, yet their collective information remained questionable and based on uncorroborated and dated testimony unconfirmed by investigators. The end result was the Government's failure to establish a conspiracy among those charged, both named and unnamed.

In its opinion, the Eighth Circuit analyzed the conspiracy conviction, finding:

To the extent Shaw argues the evidence was insufficient to prove the existence of a conspiracy, we find this argument meritless. The Government introduced into evidence a transcript of Shaw's testimony from a 2009 trial, in which he admitted to an agreement with others to purchase and distribute drugs. Moreover, he sold at least seventy-five pounds of marijuana over three years to the distributors who testified at trial.

*U.S. v. Shaw*, 751 F.3d at 921.

Counsel is not ineffective for failing to put forth an argument which has no basis in law or fact, such as the inaccurate claim made here. Similarly, Movant cannot establish prejudice from appellate counsel's failure to petition for a rehearing and rehearing *en banc* because there is no reasonable probability that the outcome on either would have differed. Movant's fifth claim is denied.

## 6. Was Trial counsel ineffective for failing to investigate and present evidence of Movant's history of drug abuse?

Movant claims that trial counsel was ineffective for not presenting evidence of Movant's drug abuse at trial, from which the jury could have found that his possessions of drugs were for personal use, not distribution. This claim, another domino in the chain of dominoes, falls because Movant fails to show prejudice.

When there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice. *Christenson v. Ault*, 598 F.3d 990, 997 (8th Cir. 2010) (*citing Strickland*, 466 U.S. at 700 ("Given the overwhelming aggravating factors, there is no reasonable probability that the omitted evidence would have changed the conclusion."); *see also Reed v. Norris*, 195 F.3d 1004, 1006 (8th Cir.1999) ("We find it unnecessary to discuss the reasonableness of counsel's conduct because, given the overwhelming evidence of [petitioner's] guilt presented at trial, we find that it would be impossible for him to demonstrate prejudice under Strickland.")).

At trial, the Government presented abundant evidence of Movant's drug distribution, including witnesses who testified to buying drugs from Movant, police officers who testified to finding large amounts of cash and distributable amounts of drugs in Movant's possession, and most significantly, Movant's own testimony from his 2009 trial in which he admitted to selling drugs. In light of this overwhelming evidence, demonstrating prejudice resulting from the alleged ineffective assistance would be impossible in this case. The claim is denied.

## 7. Was Trial counsel was not ineffective for failing to communicate with Movant?

Next, Movant claims that trial counsel was ineffective for failing to communicate with Movant, in that counsel failed to keep Movant informed about important developments in the Government's case. This claim focuses on

Movant's allegation that counsel failed to inform him in advance of trial that Darnell Lathan was a witness for the Government. Movant claims that because he did not know Lathan was going to testify, he "was persuaded by counsel to sign a stipulation . . . that took away [his] rights to ask the prosecutor's expert questions about a shooting that would have shown [Movant] and Darnell Lathan did not get along."

Movant has not established that counsel's performance fell below an objective standard of reasonableness, or that he was prejudiced. The evidence that Movant claims would have been presented at trial absent counsel's ineffectiveness is information that Movant was a suspect in multiple shootings against Lathan and his family and associates. In one such incident, Movant was suspected of shooting into Lathan's grandmother's home in June, 2008. Movant argues that this evidence would have cast doubt on Lathan's testimony that he regularly bought drugs from Movant.

Even if the Court assumes that counsel did not timely inform Movant that Lathan was to testify, it cannot be concluded that counsel was unreasonable for not introducing evidence of the shootings. Counsel could reasonably decide not to introduce information that Movant was suspected of a violent attack on the home of a grandmother as it would surely prejudice the jury against Movant. In fact, the jury acquitted Movant of Count Three, possessing a firearm in furtherance of a

drug trafficking crime from June 1, 2008 through 2009. Evidence the Movant was suspected of shooting up a rival's drug territory on June 19, 2008, may have led the jury to find Movant guilty of Count Three as well.

The exclusion of evidence of the shooting at Lathan's grandmother's house was reasonable trial strategy which belies the claim. The claim is denied.

## 8. Was Appellate counsel ineffective for failing to challenge Movant's criminal history points on direct appeal?

For his eighth claim, Movant alleges that appellate counsel was ineffective for failing to challenge points added to his criminal history calculation in the PSR, asserting that no documentation of judicial records existed that showed the actual sentence imposed for certain driving offenses.

Movant cites the absence of "Shepard-approved documentation," apparently referencing the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13 (2005). Movant's reliance on *Shepard* is misplaced, as *Shepard* concerns the determination that a prior state offense amounted to "generic burglary" so as to trigger a mandatory minimum sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). No § 924(e) sentencing minimum was applied in Movant's case. *Shepard* is inapplicable here.

Movant's observation that the PSR notes "Court records provide no specific information regarding adjustment to supervision" is inconsequential. In order to apply a prior offense to a defendant's criminal history, it is not necessary for the

Court to receive documentation of the defendant's adjustment to supervision related to that offense.

For each driving offense which resulted in a 120-day sentence, the PSR properly added two criminal history points. Appellate counsel was not ineffective for failing to raise this meritless argument on appeal. This claim is likewise denied.

### 9. Was Appellate counsel ineffective for failing to challenge the body armor enhancement to the offense level computation for Count I?

Movant claims that appellate counsel acted unreasonably in failing to appeal the two-level sentencing enhancement applied to Count I involving the use of body armor. Counsel was not ineffective because there is no reasonable probability that the outcome of the appeal would have been different had this issue been raised.

The applicable Sentencing Guideline provides:

If--
(1) the defendant was convicted of a drug trafficking crime or a crime of violence; and
(2) (apply the greater)--
    (A) the offense involved the use of body armor, increase by 2 levels; or
    (B) the defendant used body armor during the commission of the offense, in preparation for the offense, or in an attempt to avoid apprehension for the offense, increase by 4 levels.

U.S.S.G. § 3B1.5. The Application Notes define "Use" as:

"Use" means (A) active employment in a manner to protect the person from gunfire; or (B) use as a means of bartering. "Use" does not mean mere possession (e.g., "use" does not mean that the body armor was

found in the trunk of the car but not used actively as protection).
"Used" means put into "use" as defined in this paragraph.

*Id*. The basis for Movant's argument here seems to be that the only evidence concerning body armor was the testimony of Darnell Lathan. Movant states that "the District Court's account of the evidence was not plausible in light of the record." As discussed multiple times herein, the admission of Lathan's testimony was not reversible error; Movant's assertions that Lathan's testimony was fabricated are unfounded.

Lathan's testimony was that he once went to buy drugs from Movant and Movant "had on a bulletproof vest." Lathan testified that he touched Movant's chest, and asked about the body armor. Lathan testified that there was a firearm nearby, and that he believed Movant was armed during all of their interactions.

Had appellate counsel raised this issue on appeal, there is no reasonable chance that the outcome would have differed. Movant was wearing the body armor, it was not in the trunk of a car or otherwise passively stored away so as to indicate mere possession. One wears, or "uses" a bulletproof vest for the purpose of protecting themselves from gunfire. The sentencing enhancement was properly applied, and counsel was not ineffective for failing to raise this meritless issue. The claim is denied.

**10. Was Appellate counsel ineffective for failing to challenge the aggravating role sentencing enhancement?**

Movant claims that appellate counsel should have challenged the aggravating role sentencing enhancement applied to Count I because the Court did not conduct a "fact-intensive inquiry" in determining culpability between co-defendants or articulate the reasons for its denial of Movant's objection to the two level enhancement.

Movant's assertion that the Court overruled his objection to the aggravating role enhancement "without any explanation" is inaccurate. At the sentencing hearing, the Court overruled the objection for the reasons "[a]s noted." The reason for the enhancement is expressly noted in Paragraph 18 of the PSR, which states that Movant "directed [co-defendant] Stanley Carter and Richard Bobbitt to murder rival drug traffickers while Movant waited in the car. At the sentencing hearing, Stanley Carter and David Ewing testified about Movant instructing and pressuring Carter and Bobbitt to shoot the victims. Just before the Court ruled on Movant's objection, the Government had responded to the objection by referencing the testimony of Ewing and Carter. The Court's reason for overruling Movant's objection, therefore, was clearly articulated.

Movant also restates his claim that the evidence at trial was insufficient to show a conspiracy between two or more people. Again, as stated before, appellate counsel raised this issue on appeal, and the Eighth Circuit denied relief. *U.S. v.*

*Shaw*, 751 F.3d at 921 ("To the extent Shaw argues the evidence was insufficient to prove the existence of a conspiracy, we find this argument meritless.").

The enhancement under U.S.S.G. § 3B1.1(c) was proper and the Court's reason for overruling Movant's objection was clear. Appellate counsel was not ineffective for failing to raise a meritless argument on appeal. The claim is denied.

### SECOND AMENDED MOTION

The one-year statute of limitations for a § 2255 motion runs from the date a movant's judgment becomes final. In this case, the statute of limitations began to run on June 21, 2015. On December 11, 2015, Movant filed a motion requesting a copy of his trial transcripts and other documents. This motion was granted on May 5, 2016. The statute of limitations for Movant's § 2255 motion ran out on June 21, 2016, and Movant filed his Second Amended Motion on July 20, 2016. The Government argues that the claims set forth in Movant's Second Amended Motion should be time barred. The Court will nevertheless rule on the merits.

All of Movant's claims in the Second Amended Motion focus on one portion of the trial transcript, which occurred while the jury was deliberating, and had just sent its fourth note to the Court:

> THE COURT: All right. [The jury] Foreman gave this note to my law clerk, Mindy, when she took the last response back, which reads, "I have to see you, Your Honor, please," signed by [jury Foreman]. So I don't --

AUSA REA: Well, I mean, I know what it means, but the question is whether or not he --

THE COURT: You do?

AUSA REA: Sure.

THE COURT: Okay.

AUSA HOAG: It's about a juror.

AUSA REA: It's about a juror. They're having a problem with someone unwilling to deliberate.

THE COURT: That's what I was thinking, but I didn't want to think that.

AUSA REA: That's exactly what's happening.

AUSA HOAG: Yeah. That's exactly what I told them two hours ago or an hour and a half ago. I'm sorry. That's exactly what I said an hour and a half ago.

DEFENSE COUNSEL: I believe that the Court knows what it can do and can't do, and I don't think any one of us are in a position to tell him what to do. We know what it says, but it's kind of a tricky situation. I think the stamp is the best way to reiterate what they have to do. [The Court's stamp reads: "You are to be guided by the evidence as you recall it and the instructions of law provided to you."]

THE COURT: Which is what I was going to do. I mean I could be more specific, but I can't, yeah, exactly, because that would complicate it even more, so--

DEFENSE COUNSEL: I think in all fairness you have to use your stamp.

THE COURT: Correct. So that's what I'm going to do, okay, and [jury Foreman] will get mad at me, but that's okay.

Movant claims that this exchange shows that the Government was communicating with the jury during deliberation, and that appellate counsel was ineffective for failing to raise an associated prosecutorial misconduct claim on appeal. Movant also claims, based on the above exchange, that the jury did not convict him

36

unanimously, that trial counsel was ineffective for not moving for a mistrial when a juror was unwilling to deliberate.

Because the prosecutorial misconduct issue and jury unanimity issue were not raised at trial or on direct appeal, the claims are procedurally defaulted. To overcome the procedural default, Movant must demonstrate "cause" that prevented him from raising the claim on direct appeal, and "actual prejudice" resulting from the alleged prosecutorial misconduct. As discussed above, attorney error can constitute "cause" but only when the attorney's performance was constitutionally deficient under the *Strickland* standard. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Armstrong v. Iowa*, 418 F.3d 924, 927 (8th Cir. 2005). Movant offers no other cause as to why his two claims could not be raised on appeal - therefore, if the Court finds that counsel was not ineffective as to an issue, the associated defaulted claim need not be reached.

**Alleged Government communications with the jury**

Movant now alleges that improper communication between the Government and the jury occurred during deliberations. Of course, "[i]n a criminal case, contact or communication with a juror during a trial about the matter pending before the jury is presumptively prejudicial." *Von Kahl v. United States*, 242 F.3d 783, 791 (8th Cir. 2001) (*citing Remmer v. United States*, 347 U.S. 227, 229 (1954)). "However, some communication or contact must occur before it can be

deemed presumptively prejudicial." *United States v. Williams*, 545 F.2d 47, 51 (8th Cir. 1976). AUSA Rea and AUSA Hoag's statements that they knew what the jury note meant are not indicative of communication with the jury. None of the AUSAs' statements indicate that anyone told them anything, which is what would have had to occur for them to know a juror was unwilling to deliberate. Rather, as the Court and defense counsel understood based on their own experience with juries, the AUSAs were speculating on why the jury Foreman sent a cryptic note at that point in jury deliberations. The Court and both parties' attorneys knew that is not uncommon for a jury to reach an apparent impasse in deliberations, only to reach a verdict later. The Court and defense counsel, based on years of experience with jury trials, understood the statements of the AUSAs to be pure speculation as to the mindsets of the jury, not actual knowledge thereof. The Court would not tolerate even the possibility of improper communication between the jury and the parties.

Because no communication with the jury occurred, appellate counsel was not ineffective for failing to raise a meritless prosecutorial misconduct claim on appeal. The Court does not, therefore, reach Movant's defaulted jury communication claim. Both of those claims are denied.

**Juror's unwillingness to deliberate**

Movant's claim that trial counsel was ineffective for failing to move for a mistrial based on a juror's unwillingness to deliberate is also denied. Movant was not prejudiced by counsel's inaction, because a motion for a mistrial would have been denied, resulting in the same outcome. The trial judge exercises broad discretion in deciding whether to discharge a jury that claims to be deadlocked. *See Arizona v. Washington*, 434 U.S. 497, 509 (1978). To that end, non-coercive instructions from the Court to encourage a purportedly hung jury to reach a unanimous verdict are permissible. *Allen v. United States*, 164 U.S. 492 (1896). Here, the instruction given, "You are to be guided by the evidence as you recall it and the instructions of law provided to you," is in no way coercive. Counsel was not ineffective for not moving for a mistrial based on a hung jury. Accordingly, Movant's associated claim that the jury did not convict him unanimously is procedurally barred. Both claims are denied.

## Conclusion

Based upon the foregoing analysis, Movant has failed to establish he is entitled to a hearing and has failed to present any basis upon which the Court may grant relief. Movant's §2255 Motion for Post-Conviction Relief is denied.

Since the Court finds that Movant's claims can be conclusively determined based upon the parties' filings and the records of the case, no evidentiary hearing will be necessary.

## Certificate of Appealablity

The federal statute governing certificates of appealability provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right requires that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Based on the record, and the law as discussed herein, the Court finds that Movant has not made a substantial showing of the denial of a constitutional right.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Vacate, Set aside or Correct Sentence [Doc. #1,#5, #10] is **DENIED** and **DISMISSED** in all respects.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability.

Dated this 20TH day of December, 2018.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE